UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DARREN BROWNLEE, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>KYOCERA SGS PRECISION TOOLS, )<br>INC., )<br>)<br>    Defendant. ) | Cause No. 1:20-CV-00450-HAB |

## OPINION AND ORDER

Plaintiff Darren Brownlee (Brownlee) applied via a recruiting agency for a set-up machinist position with Defendant Kyocera SGS Precisions Tools, Inc.'s (KSPT) Medical Division. Despite having over two decades of prior machinist experience and testing well on pre-hiring assessments, Brownlee did not get the job. He wasn't even interviewed. KSPT explains its decision by asserting that Brownlee did not have the skills the hiring manager was looking for and even if he had, KSPT did not want to pay the recruiting agency fee. Instead, KSPT asserts it chose a better qualified applicant from a recruiting source that did not charge it a fee. Brownlee disagrees with this explanation believing his race motivated the decision. He filed suit for race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq*.[1]

Before the Court is KSPT's Motion for Summary Judgment (ECF No. 19). The parties have fully briefed the motion (ECF Nos. 20, 26, 29) making the matter ripe for decision. For the following reasons, the Court DENIES the Motion for Summary Judgment.

## FACTUAL BACKGROUND

---

[1] Brownlee also asserted age discrimination but has now abandoned that claim. (ECF No. 26 at 1: "It does not appear that the age claim is able to be supported by the known material facts."). The Motion for Summary Judgment is therefore GRANTED as to Plaintiff's age discrimination claim.

KSPT opened its Medical Division in Columbia City, Indiana in 2009 and produces unique, customer designed orthopedic devices using highly trained engineers. KSPT maintains an equal employment opportunity policy dedicated to non-discrimination in employment for all classifications protected by federal, state, or local laws. (Loretta McKinley[2] Decl., ECF No. 21-1, ¶ 6). The policy applies to all terms of employment, including hiring. (*Id.*).

Drew Johnson ("Johnson") is the Operations Manager of KSPT and the individual tasked with hiring and supervising KSPT employees. (Johnson Decl., ECF No. 21-2, ¶ 2). In February 2020, KSPT sought a full-time set-up machinist for its Medical Division. (*Id.* ¶ 3). KSPT used Spherion, a recruiting agency, as well as Indeed.com, a recruiting website, to post and fill the position. (McKinley Decl., ¶ 9). Spherion charges a recruiting fee equal to 24% of the expected annual salary if an employer hires a candidate. For the set-up machinist position, hiring a candidate from Spherion would have cost KSPT $11,000-$12,000 on top of the annual salary paid to the candidate. (*Id.* ¶ 9). Indeed.com does not charge KSPT a recruiting fee for its candidates. (Johnson Decl. ¶ 4).

KSPT's job posting contained the following description of the position:

> The position is responsible for accurate and effective set-up and/or operation of CNC machines, manual machines, or other related equipment. The position requires the ability to produce manufactured product at an advanced set up experience level. The position supports a clean and a safe manufacturing environment while focusing on continuous improvement, quality and support of teamwork throughout KSPT Medical Division.

(ECF No. 26-1 at 30). In the section titled "Other Qualifications Desired" the posting listed three training and experience requirements: (1) five or more years of CNC machining experience preferred; (2) working knowledge of decimal and metric system, basic mathematical application; and (3) working knowledge of micrometer, precision scale, indicator, and other required

---

[2] McKinley is KSPT's Human Resource Manager.

2

test/inspection equipment. (*Id*. at 31) Nothing in the posting specifically required candidates to have medical manufacturing experience.

On February 7, 2020, Spherion recruiter Rosa Betancourt-Avila (Rosa) emailed Brownlee's resume to Johnson and provided Johnson more information about Brownlee:

> Darren has over 25 years of CNC experience and has worked with Swiss lathe Star machines. He also has experience with G-Codes and M-Codes. He resigned his last job in July of last year to take care of his ill mother who he just put into a home last week, so he is ready to return to the workforce. His goals are to always improve, possibly learn CAD and eventually move up in a company which he is proud to work for. Seems very knowledgeable, skilled and has a safety-first mentality!

(Johnson Decl. Ex. 1 at 10-11). Although KSPT did not request Spherion conduct skills tests on applicants, Spherion apparently did so as part of its own screening process. (*Id.*; Johnson Decl. ¶ 7). Rosa provided Johnson with the scores from the CNC skills assessments she had administered to Brownlee and revealed "he did very well on the assessments." (*Id.* ¶ 5 and Ex. 1 at p. 10). Despite being provided with the scores, Johnson states he did not use any assessment scores received from recruiters when determining the best qualified candidate for the position. (*Id.* ¶ 7).

After receiving Brownlee's resume, Johnson was considering interviewing him. Johnson turned to social media, in this case, Facebook, looking for inappropriate behavior by Brownlee on social media. (Johnson Decl. ¶ 8: "I regularly review the Facebook page of applicants I am interested in interviewing to see if the applicant displays any inappropriate behavior on social media."). Brownlee's Facebook page showed photos of him that identify his race– he's African American – and his profile represented that he lived in Parchment, Michigan. (Johnson Decl. ¶ 9; Brownlee Aff., ECF No. 26-1, ¶ 10). Johnson did not appear to find anything he considered inappropriate (or at least his Declaration does not indicate that he did). But after looking at Brownlee's Facebook page and discussing Brownlee's qualifications with General Manager Barry

3

Leffers and Process Engineer Robert Cornwell, Johnson decided not to interview Brownlee.[3] (Johnson Decl. ¶ 10). Johnson then communicated his decision to Rosa through this email chain:

> [Johnson] It was nice meeting you and Molly yesterday. I would like to pass on this one and keep looking.
>
> [Rosa] Okay no problem, I will continue my search. Can you tell me what you did not like about the resume? Just want to make sure we are on the same page. If there is something missing, or that you saw that I didn't, please let me know. I would welcome the feedback.
>
> [Johnson] I was on there [sic] [F]acebook and it looks like he live [sic] in Michigan. We want someone who lives in Columbia City, Warsaw or Fort Wayne. His resume wasn't too bad, but wanted to see a little be [sic] more on the medical side.
>
> [Rosa] He actually lives in Fort Wayne. He moved here when his mother got ill. He is currently living in Fort Wayne and does not plan to return to Michigan that is why he quit his job at Stryker.
>
> [Johnson] Ok that makes sense. I think for right now we will pass on him. He is border line. Keep sending more 😊

(Johnson Decl. Ex. 1 at pp. 7-11). Johnson maintains he did not interview Brownlee because, "I felt his skills and experience were border line and did not meet the skills and experience I was seeking." (Johnson Decl. ¶ 14). He also maintains he did not consider Brownlee's race when making the decision not to interview him. (*Id.*)

Ten days after learning from Rosa that he was not being considered for the position, Brownlee filed his Charge of Discrimination. (Charge of Discrimination, ECF No. 1-1 at 1). On March 30, 2020, KSPT hired Raymond Slusher (Slusher), who is caucasian, for the set-up machinist position. KSPT maintains he was better qualified than Brownlee and applied through a recruiting resource that did not charge KSPT a fee. (McKinley Decl. ¶ 13). Johnson also elaborates that Slusher had medical experience with local medical manufacturing facilities that "I knew used

---

[3] The Court has not been provided with any declarations from Leffers or Cornwell confirming that Johnson spoke with them about Brownlee's qualifications.

the same equipment as KSPT." (Johnson Decl. ¶ 15). Johnson maintains that because Slusher applied through Indeed.com he "knew KSPT would not incur recruiting fees upon hiring him." He then explains that "[a]s a small facility, we prefer to avoid recruiting fees, particularly when a better qualified candidate applies through a source that does not charge recruiting fees." (*Id.*).

## DISCUSSION

### A. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of designated evidence that show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the light

most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

**B. Analysis**

Title VII makes it unlawful for an employer "to fail or refuse to hire ... any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). At summary judgment, the critical question is whether the plaintiff has produced enough evidence to permit a reasonable factfinder to conclude that the plaintiff's race or other proscribed factor caused the adverse employment action. *See Purtue v. Wis. Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir. 2020) (quoting *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018)). To answer that question, the Court looks at the evidence holistically. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017); *see also Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016) ("[A]ll evidence belongs in a single pile and must be evaluated as a whole.").

Employing the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), is one way that a plaintiff can assist the court in sifting through the evidence to assess whether discrimination under Title VII is established.  Under that approach, the plaintiff must first produce evidence establishing a four-part prima facie case: "(1) [h]e was a member of a protected class; (2) [h]e applied for and was qualified for the position sought; (3) [h]e was rejected for the position; and (4) the employer [hired] someone outside the protected group who was not better qualified than the plaintiff." *Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, 733 F.3d 722, 728–29 (7th Cir. 2013).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 728. "For a failure-to-hire claim, one example of a legitimate, nondiscriminatory reason a defendant may offer is that the individuals ultimately hired were better candidates than the plaintiff." *Chatman v. Bd. of Educ. of City of Chicago*, 5 F.4th 738, 747 (7th Cir. 2021).

If the employer supplies a legitimate, nondiscriminatory reason, the burden then shifts back to the plaintiff to produce evidence that the defendant's reason is pretext for discrimination. *Johnson*, 733 F.3d at 728. In this context, pretext "means a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). But "a showing of pretext alone is not enough; the plaintiff must also show that the explanations are a pretext for the prohibited animus." *Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 740 (7th Cir. 2013).

Where, as in this case, the employer's legitimate, nondiscriminatory reason for not hiring the plaintiff is that he was not as qualified as another candidate for the position, the Court proceeds directly to the question of pretext without first analyzing whether the plaintiff has established a prima facie case under the *McDonnell Douglas* framework. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 885 (7th Cir. 2012) (skipping the plaintiff's initial burden and focusing on the employer's rationale and pretext); *see also Oliver v. Joint Logistics Managers, Inc.*, 893 F.3d 408, 413 (7th Cir. 2018).

KSPT maintains that its decision not to interview Brownlee was because he didn't have the right skills and experience. Ultimately, KSPT asserts that it hired a candidate with better qualifications than Brownlee.[4] The Court can thus dispense with the prima facie case and

---

[4] KSPT has not provided Slusher's qualifications to the Court. However, it is ultimately the employer's honest belief that Slusher was better qualified that matters and not whether the Court believes it. As set out

7

determine whether Brownlee has produced evidence sufficient to support a finding that the employer's proffered reasons were pretextual. *Fischer v. Avanade, Inc.*, 519 F.3d 393, 402 (7th Cir. 2008).

Brownlee asserts that suspicious timing and shifting explanations by Johnson demonstrate pretext. More specifically, he argues that Johnson's decision not to interview him, made within hours of Johnson receiving his resume and after reviewing his Facebook profile, is suspect. When the different reasons given by Johnson in his emails for not interviewing Brownlee are factored in, Brownlee asserts that a jury could draw a reasonable inference that the explanations were pretextual and he was not interviewed or hired because of his race. *Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 579 (7th Cir. 2003) ("One can reasonably infer pretext from an employer's shifting or inconsistent explanations for the challenged employment decision."). Accepting the facts and all reasonable inferences in Plaintiff's favor, the Court agrees.

Upon receiving Brownlee's resume, Johnson did not immediately rule him out for an interview, nor does he say anywhere in his Declaration that he thought Brownlee was unqualified for the machinist position *before* checking his Facebook profile. By his own admission, he was considering interviewing Brownlee before he checked Brownlee's Facebook profile. (Johnson Decl. ¶ 8: "Since I was considering interviewing Mr. Brownlee, I reviewed Mr. Brownlee's Facebook page."). After reviewing Facebook and allegedly discussing his qualifications with Leffers and Cornwell, Johnson then made the decision that Brownlee's qualifications were "borderline."

---

below, the Court concludes that the evidence presented by Plaintiff calls this honest belief into question. At trial, it is possible that a reasonable jury could conclude that the absence of Slusher's qualifications in the record further supports the Plaintiff's position that despite his qualifications race played a role in the decision not to interview or hire him.

But even then, that was not Johnson's first rationale for not interviewing Brownlee. Johnson's first words in his email to Rosa when she appeared confused why Brownlee was not a suitable candidate was something Johnson learned from the Facebook profile – that Brownlee lived in Michigan. Johnson then goes on to tell Rosa that Brownlee's resume "wasn't too bad" but he wanted more "medical." Yet nowhere in the job posting was medical experience a listed requirement and Brownlee's resume showed *six years* of work experience as a CNC Machinist at Stryker Medical. Then, even after Rosa corrected Johnson's belief that Brownlee lived in Michigan, Johnson still declined him an interview and told Rosa another reason – he was "borderline."

Presented with this information, a jury could reasonably infer that Brownlee's qualifications were not the reason for his failure to receive an interview and that the real reason was a prohibited one. A reasonable interpretation of the facts may lead a jury to conclude that until Johnson viewed Brownlee's Facebook page, he was a qualified candidate that he planned to interview and perhaps, hire. But something on the Facebook page altered that decision. Johnson mentioned that Brownlee was from Michigan, but that explanation was corrected by Rosa. Since that was the only explanation initially given by Johnson and it was a fact he learned by his Facebook research, a jury could conclude that some other information obtained from the Facebook page also influenced his decision. In contrast, a jury could also find Johnson's email to Rosa innocuous and conclude that Johnson saw something lacking in Brownlee's resume and that, combined with the belief that he lived in Michigan, was enough to pass him by. But in the face of competing inferences, it is not this Court's job to weigh the evidence.

One last point is necessary from this record. After Brownlee filed his Charge of Discrimination and filed suit, KSPT proffered another reason not previously mentioned for its

9

decision – that it hired Slusher (and not Brownlee), in part, because Slusher applied through Indeed.com and KSPT would not be charged Spherion's recruiting fee. This last rationale causes the Court considerable pause. KSPT *sought* candidates from Spherion knowing that it would be charged a recruiting fee (or at least it has submitted no evidence to the contrary). Johnson presented one set of explanations to Rosa for why KSPT wasn't interested in Brownlee. But then Johnson told Rosa *to keep* sending additional candidates. (Johnson Decl. Ex. 1 at 7: "Keep sending more."). While it may be understandable why Johnson would not want to tell Rosa that the recruiting fee was an issue (it wanted Spherion to continue finding candidates), there is no evidence in the record that the fee was actually one of Johnson's considerations. There is nothing before the Court suggesting that at the time Johnson made the decision not to interview Brownlee, the fee played any role in the decision-making process.

A jury reviewing this evidence might raise an eyebrow, especially in light of Brownlee's filing a Charge of Discrimination. If the recruiting fee factored into the decision not to interview/hire Brownlee, why request more candidates be provided by Spherion? If KSPT had concerns about paying recruiting fees why use Spherion and not recruiting sources not charging this type of fee? Depending on the answers to these questions a reasonable inference that the jury may reach is that the fee itself became an after-the-fact justification to cover up Johnson's intentional discrimination in the hiring process.

The Court acknowledges that federal discrimination statutes are not vehicles for substituting the court's judgment over the business judgments of the employer. And in the context of hiring, the "court must respect the employer's unfettered discretion to choose among qualified candidates." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir. 2002) (quoting *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (1996)); *see also Millbrook*, 280 F.3d at 1181 ("[A]

court's role is to prevent unlawful hiring practices, not to act as a super personnel department that second-guesses employers' business judgments."). But reading the facts in Plaintiff's favor, he has produced sufficient evidence from which a jury could reasonably conclude that despite his over two decades of work as a machinist, KSPT refused to interview/hire him because of his race.

## CONCLUSION

Based on the reasoning above, KSPT's Motion for Summary Judgment is DENIED (ECF No. 19) as to Plaintiff's Title VII claim for race discrimination. The Motion is GRANTED as to Plaintiff's age discrimination claim. The Court will set this matter for a scheduling conference by separate minute entry.

SO ORDERED on March 29, 2022.

s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT